# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> ANGEL KUILAN | 2025 APR -7 P 4: 32 <br><br> No. 1:25-cr- 00063-SDN |

## INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.    The defendant resided in Waterville, Maine.

2.    The Defendant held a bank account at Bank A, which was headquartered in Pittsburgh, Pennsylvania.

<u>Unemployment Insurance</u>

3.    Unemployment Insurance ("UI") was a joint state and federal program that provided monetary benefits to eligible beneficiaries.  UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own.  Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits, including the Pandemic Unemployment Assistance Program (PUA), Federal Pandemic Unemployment Compensation (FPUC), and the Lost Wages Assistance Program (LWAP).

4.    The Maine Department of Labor, Bureau of Unemployment Compensation ("MDOL-BUC") administered the UI program for the State of Maine.  Servers for

MDOL-BUC were located outside of the State of Maine.

5.      U.S. Bank National Association ("US Bank") was a financial institution. MDOL-BUC paid UI benefits through US Bank debit cards.

The Paycheck Protection Program

6.      The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent or mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

7.      To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses.

8.      PPP loan applications were electronically submitted or caused to be submitted by the borrower.  Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

2

9.      The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase personal consumer goods or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

10.     Lender A was a participating PPP lender headquartered in Cherry Hill, New Jersey.  Servers for Lender A were located outside of the State of Maine.

11.     The defendant held a bank account with Lender A, which has branch offices in the District of Maine.

The Maine Economic Recovery Grant

12.     The State of Maine Department of Economic and Community Development ("Maine DECD") administered the Maine Economic Recovery Grant ("MERG") Program.

13.     The MERG Program was designed to provide grants for businesses and non-profit organizations that demonstrated a need for financial relief based on lost revenues or expenses related to the disruption of business operations caused by the COVID-19 pandemic.

14.     To obtain a MERG grant, a qualifying business had to submit an application by October 29, 2020, through an online portal available through Maine DECD's website.  MERG applications were electronically submitted or caused to be submitted by the applicant.  Servers for these electronic submissions were located outside of the State of Maine.

15.     To qualify for a MERG grant, the business or organization was required to

demonstrate a need for financial relief based on lost revenues or expenses incurred since March 1, 2020, due to COVID-19 impacts or the related public health response. Additionally, the business or organization was required to demonstrate an expected 20% loss in revenue (minus expenses for 2020). The business or organization was required to be in good standing with all Maine tax obligations, not have permanently ceased all operations, and not be in bankruptcy, among other things.

16.     The proceeds of a MERG grant could be used for certain specified items, such as payroll costs, business related equipment, or rent or mortgage payments for business facilities. The proceeds of a MERG grant were not permitted to be used by recipients to purchase personal consumer goods or services.

## COUNTS ONE - THREE
### Wire Fraud

17.     Paragraphs 1 through 5 of this Indictment are incorporated herein.

### THE SCHEME AND ARTIFICE

18.     Beginning at an unknown time, but no later than on about May 12, 2020, and continuing until at least March 20, 2021, in the District of Maine and elsewhere, the Defendant,

### ANGEL KUILAN

knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

19.     The manner and means by which the Defendant sought to accomplish the scheme and artifice included, among others, the following:

a.  The Defendant obtained, or caused to be obtained, personal identifying information of others, including Victims 1, 2, and 3, without their knowledge and consent.

b.  The Defendant prepared and submitted, and caused to be prepared and submitted, false and fraudulent applications for UI payments to MDOL-BUC using personal identifying information of others without their knowledge and consent.

c.  The Defendant directed, and caused to be directed, a US Bank debit card loaded with UI benefits obtained through the scheme to be mailed to the Defendant. The Defendant directed, and caused to be directed, a US Bank debit card in Victim 1's name that was loaded with UI benefits to be mailed to the Defendant.

d.  The Defendant caused fraudulently obtained UI payments to be deposited by wire into a bank account under his control. The Defendant caused fraudulently obtained UI payments with respect to Victim 2 and Victim 3 to be deposited into a bank account under his control.

e.  The Defendant used, and attempted to use, a debit card from US Bank in Victim 1's name, obtained as part of the scheme, to withdraw fraud proceeds and to make purchases.

20.    On about the dates set forth below in each count, in the District of Maine and elsewhere, the Defendant,

**ANGEL KUILAN**

having devised and intending to devise a scheme to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses,

representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE |
|-------|------------------|---------------------|
| ONE | May 12, 2020 | Electronically filed application for UI benefits in Victim 1's name submitted to the MDOL-BUC in the District of Maine. |
| TWO | September 10, 2020 | Electronically filed application for UI benefits in Victim 2's name submitted to the MDOL-BUC in the District of Maine. |
| THREE | May 13, 2020 | Electronically filed application for UI benefits in Victim 3's name submitted to the MDOL-BUC in the District of Maine. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS FOUR – SIX
### Aggravated Identity Theft

21.     Paragraphs 1 through 5 and 18 through 20 of this Indictment are incorporated herein.

22.     On about the dates set forth below in each Count, in the District of Maine and elsewhere, the Defendant,

**ANGEL KUILAN**

knowingly possessed and used, without lawful authority, a means of identification of another person as described below, during and in relation to the commission of wire fraud, as charged in Counts One through Three of this Indictment.

| COUNT | DATE | MEANS OF IDENTIFICATION | DURING AND IN RELATION TO COUNTS |
|-------|------|-------------------------|----------------------------------|
| FOUR | May 12, 2020 | Victim 1's name and xx/xx/1963 date of birth | ONE |

| FIVE | September 10, 2020 | Victim 2's name and xx/xx/1987 date of birth | TWO |
| SIX | May 13, 2020 | Victim 3's name and xx/xx/1961 date of birth | THREE |

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT SEVEN
## Wire Fraud

23.     Paragraphs 1 and 6 through 11 of this Indictment are incorporated herein.

### THE SCHEME AND ARTIFICE

24.     Beginning at an unknown time, but no later than on about June 18, 2020, and continuing until at least October 21, 2021, in the District of Maine and elsewhere, the Defendant,

### ANGEL KUILAN

knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretense, representations, and promises.

### MANNER AND MEANS

25.     The manner and means by which the Defendant sought to accomplish the scheme and artifice included, among others, the following:

   a.  The defendant prepared and submitted, and caused to be prepared and submitted, a false and fraudulent application for a PPP loan that included materially false and fraudulent representations and pretenses, such as:

      i.   Providing a false gross income amount for 2020;

      ii.  Falsely stating that the loan proceeds were necessary to support the applicant's payroll, to retain workers, and to make utility payments,

and that the loan proceeds would be used for those purposes; and

    iii.    Falsely certifying that the information in the application and in all supporting documents was true and accurate.

b.    The defendant prepared and submitted, and caused to be prepared and submitted, false and fraudulent documents in support of the PPP application, such as:

    i.    An IRS form that falsely stated, among other things, the applicant's gross income.

c.    The defendant caused Lender A to transfer the fraud proceeds to a bank account under his control; and

d.    The defendant used the fraud proceeds for his personal benefit rather than for the specified expenses authorized under the PPP.

26.    As part of the scheme, the defendant filed, or caused to be filed, a PPP loan application on about July 8, 2020, with Lender A for approximately $6,487.

27.    As part of the scheme, the defendant filed, or caused to be filed, a second draw PPP loan application on about February 5, 2021, with Lender A for approximately $6,487.

28.    As a result of the scheme, the defendant fraudulently obtained approximately $12,974 in PPP loan proceeds.

29.    On about July 8, 2020, in the District of Maine and elsewhere, the Defendant,

**ANGEL KUILAN**

having devised and intending to devise a scheme to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses,

representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud. Specifically, on about July 8, 2020, the defendant did transmit and cause to be transmitted an application for a PPP loan to Lender A.

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT EIGHT
### Wire Fraud

30.    Paragraphs 1 and 12 through 16 are incorporated herein by reference.

### THE SCHEME AND ARTIFICE

31.    Beginning at an unknown time, but no later than on about August 23, 2020, and continuing until at least February 10, 2021, in the District of Maine and elsewhere, the Defendant,

### ANGEL KUILAN

knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretense, representations, and promises.

### MANNER AND MEANS

32.    The manner and means by which the Defendant sought to accomplish the scheme and artifice included, among others, the following:

a.    The defendant prepared and submitted, and caused to be prepared and submitted, a false and fraudulent application for a MERG grant that included materially false and fraudulent representations and pretenses, such as:

        i.    Providing a false gross receipts or revenue amount for 2019;

        ii.   Falsely certifying that all of the information contained in the application was true and correct;

b.  The Defendant returned and submitted, and caused to be returned and submitted, a signed letter accepting the terms and conditions of the MERG grant award.

c.  The Defendant caused Maine DECD and KVCOG to mail the MERG grant award to the Defendant.

d.  The Defendant deposited the fraud proceeds into a bank account under his control.

e.  The defendant used the fraud proceeds for his personal benefit rather than for the specified expenses authorized under the MERG Program.

f.    As part of the scheme, the defendant filed, or caused to be filed, a MERG application on about August 23, 2020, through an online portal.

g.    As a result of the scheme, the defendant fraudulently obtained approximately $16,558 in MERG grant proceeds.

33.    On about August 23, 2020, in the District of Maine and elsewhere, the Defendant,

**ANGEL KUILAN**

having devised and intending to devise a scheme to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud. Specifically, on about

August 23, 2020, the defendant did transmit and cause to be transmitted an

application for a MERG grant to Maine DECD.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## NOTICE OF FORFEITURE

Upon conviction of any of the offenses alleged in Counts One, Two, Three, Seven,

and Eight of this Indictment, charging violations of 18 U.S.C. §§ 1343 and 2, the

Defendant,

### ANGEL KUILAN

shall forfeit to the United States: pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.

§ 2461(c), any property, real or personal, constituting or derived from proceeds

traceable to the offense; and, pursuant to 18 U.S.C. § 982(a)(2), any property

constituting or derived from proceeds obtained directly or indirectly as the result of the

offense. The property to be forfeited includes, but is not limited to, a money judgment in

the amount of proceeds obtained as a result of the offense.

If any of the property described above as being forfeitable pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(2), as a result of any act

or omission of the defendant—

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without

       difficulty;

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by

28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of

the defendant up to the value of the forfeitable property described above.

All pursuant to 18 U.S.C. § 981, 28 U.S.C. § 2461, and 18 U.S.C. § 982.

A TRUE BILL,

Signature Redacted – Original on file
with the Clerk's Office

_____
GRAND JURY FOREPERSON

_____
Assistant United States Attorney
Dated: April 1, 2005